IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DUKHAN MUMIN,

                    Plaintiff,                          8:24-CV-131

vs.                                          MEMORANDUM AND ORDER

CASE MANAGER CARROLL, et al.,

                    Defendants.

    The plaintiff, Dukhan Mumin, is a non-prisoner proceeding *pro se*. He is
suing the Nebraska Department of Correctional Services (NDCS) and several
of its employees, among others, for a variety of unrelated claims. Filing 9. The
Court now conducts an initial review of the plaintiff's claims to determine
whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). The
Court must dismiss a complaint or any portion of it that states a frivolous or
malicious claim, that fails to state a claim upon which relief may be granted,
or that seeks monetary relief from a defendant who is immune from such relief.
§§ 1915(e)(2)(B).

## I. SUMMARY OF COMPLAINT

    The plaintiff's operative amended complaint (filing 9) alleges that at all
relevant times, he was incarcerated at the Community Corrections Center -
Omaha (CCC-O).[1] The plaintiff had been convicted in the District Court of
Lancaster County of one count of possession of a controlled substance, with a
habitual criminal enhancement, and sentenced in 2013 to a term of not less

---

[1] That facility houses persons committed to the NDCS. *See* Neb. Rev. Stat. § 83-171.

than 10 years' nor more than 20 years' imprisonment. Case no. 4:16-cv-3033 filing 28-19 at 20, filing 28-23 at 64-65, and filing 28-28 at 3.[2]

## 1. RETALIATION

The plaintiff's first claim, styled as "Retaliation," alleges that while he was incarcerated he was issued several misconduct reports, but they were dismissed. Filing 9 at 1. He was in the work release program, but on September 22, 2022, he returned to CCC-O "from college" and was removed from the work release program "for having a cologne bottle that defendants claimed was laced with fentanyl." Filing 9 at 2. Defendant "Case Manager Carroll," he alleges, deviated from protocol and "made the medical determination on the spot that the bottle was laced with fentanyl, without even sending it to the laboratory, as is required by Nebraska law." Filing 9 at 2. She was, he says, not qualified to make that determination. Filing 9 at 2.

The plaintiff claims that Carroll and co-defendants "Case Worker Moeshoeshoe," "Case Manager Fricke," and Warden Shawn Settles "collaborated to trump up charges" against the plaintiff, resulting in his removal from CCC-O. Filing 9 at 2. Those defendants, the plaintiff says, refused to preserve video footage that the plaintiff requested, which he asserts would have proven his innocence and "clearly illustrated that defendant Moeshoeshoe lied in his report." Filing 9 at 2.

The plaintiff contacted the Inspector General for NDCS and explained the situation. The Inspector General allegedly asked NDCS administrators to make the bottle available for testing, but they refused. About two weeks later,

---

[2] The Court judicially notices the court records for the plaintiff's underlying conviction and state postconviction proceedings, as well as his other cases in this Court. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

the plaintiff says, "it was determined that no fentanyl existed." The charges, the plaintiff alleges, were "dismissed in their entirety." Filing 9 at 2. But the plaintiff was sent to McCook, Nebraska,[3] where he was released on parole on February 22, 2023. Filing 9 at 2.

## 2. EXPOSURE TO FRIABLE ASBESTOS

The plaintiff alleges that in December 2022, "the Center"[4] hired "Floors, Inc." for a two-week job replacing carpet and tile in the front entrance of the facility. Filing 9 at 3. The plaintiff believes that "the measurements of the tiles" indicated that the tiles and carpet had been lain using glue containing asbestos. Filing 9 at 3. Floors, Inc., the plaintiff alleges, didn't use any safety measures to prevent the asbestos from becoming friable. Filing 9 at 3.

The plaintiff says he asked Warden Settles to "allow him to hire an asbestos testing company" to determine whether there was asbestos in the environment. Filing 9 at 3. Settles refused, stating that maintenance personnel had determined that there was no asbestos. Filing 9 at 3. That denial, the plaintiff claims,

- Interfered with his access to the courts in violation of the First Amendment,
- Displayed deliberate indifference to the plaintiff's serious health concerns and constitutional rights, and

---

[3] Presumably the "Work Ethic Camp," a minimum security NDCS facility located in McCook.

[4] It's not clear whether this means CCC-Omaha or the Omaha Correctional Center. The plaintiff alleges that he was at CCC-Omaha "[a]t all times relevant herein," filing 9 at 1, but he also alleges that he was transferred to the Omaha Correctional Center in September 2022, filing 9 at 2, 4.

- Violated the constitutional duty to preserve evidence relating to the issue.

Filing 9 at 3.

### 3. THEFT OF PROPERTY

Next, the plaintiff alleges that when he was transferred from CCC-O to the Omaha Correctional Center in September 2022, he had a watch and ring worth $1,000. Filing 9 at 4. The defendant evidence custodian at the Omaha Correctional Center told the plaintiff that she sent his personal property to CCC-O, but the defendant evidence custodian at CCC-O reported that the ring and watch weren't included. Filing 9 at 4. The plaintiff also notes that another inmate allegedly had jewelry stolen from him after being removed from CCC-Omaha to the Omaha Correctional Center.[5]

### 4. UNLAWFUL RESTRAINT

The plaintiff's final claim, styled as "unlawful restraint," is directed at the execution of his sentence. Filing 9 at 4. As he puts it, the NDCS "engaged in a quasi-judicial act of altering the sentence imposed by the Lancaster County District Court." Filing 9 at 4. According to the plaintiff, the sentencing judge in 2013 "indicated by her sentence that [the plaintiff] was to serve 10 years to discharge the sentence." Filing 9 at 4. But the NDCS, he says, "changed the discharge date from 2023 to 2028, which said change is not

---

[5] This is a bit confusing. The rest of the complaint suggests that the plaintiff was removed from CCC-O (a community-based facility) and sent to the Omaha Correctional Center (a minimum/medium security facility on the same campus). That would be consistent with the plaintiff's claim that he was accused of possessing contraband, resulting in his transfer from community corrections to a higher level of security. *See* filing 9 at 1-2. But then why would the plaintiff's property have been sent *from* the Omaha Correctional Center *to* CCC-O?

reflected in the court file."[6] Filing 9 at 4. That, he claims, violated his procedural due process rights and the Ex Post Facto clause. Filing 9 at 4.

## 5. Relief Requested

The plaintiff prays for the following relief for the aforementioned claims:

- "A declaration that the [NDCS] and the Parole Board has the authority to change the decision to change [the plaintiff]'s discharge date back to its original date of February 2023";
- Enjoin the NDCS and Parole Board from requiring the plaintiff from serving the remainder of his sentence;
- Compensatory damages from Settles, Moeshoeshoe, Fricke, and the CCC-O and Omaha Correctional Center evidence custodians; and
- Punitive damages in the amount of $1,000,000.00.

Filing 9 at 5-6.

## II. STANDARD OF REVIEW

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). A plaintiff must set forth enough factual allegations to nudge their claims across the line from conceivable to plausible, or their complaint must be dismissed.

---

[6] NDCS records indicate that the defendant was eligible for parole on February 5, 2023; that he was released on discretionary parole on February 22, 2023; and that his projected release date is February 3, 2028.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A *pro se* complaint must be liberally construed, and *pro se* litigants are held to a lesser pleading standard than other parties. *Topchian*, 760 F.3d at 849. This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even *pro se* complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## III. DISCUSSION

The plaintiff's complaint, described generally, asserts several alleged violations of his federal constitutional rights. *See* filing 9, *passim*. A plaintiff can, pursuant to 42 U.S.C. § 1983, sue persons who, under color of state law, have caused them to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Section 1983 itself creates no substantive rights; it merely provides remedies for deprivation of rights established elsewhere. *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985). To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

But before addressing each of the plaintiff's claims more specifically, the Court addresses both the sprawling nature of the complaint and its insufficiency to connect some of the parties with *any* of the claims.

1. PARTIES

(a) Frakes and Peterson

Two of the named parties—Scott Frakes and Doug Peterson—aren't alleged to have done anything to the plaintiff. The complaint lists them in the caption but doesn't mention them after that. So, it's not clear what claims, if any, the plaintiff is attempting to sue them for.

The Court infers that they're named because they were the Director of the NDCS and the Attorney General of Nebraska, respectively, while the plaintiff was incarcerated.[7] But the plaintiff's constitutional claims don't permit *respondeat superior* liability. *See Jackson v. Nixon,* 747 F.3d 537, 543 (8th Cir. 2014); *see also Downs v. Bush,* No. 24-1456, 2025 WL 2058352, at *1 (8th Cir. July 23, 2025) (citing *Iqbal,* 556 U.S. at 676). There's nothing to connect them to any of the plaintiff's claims in their individual capacities. And they no longer have official capacities, nor did they when the plaintiff's complaint was filed.[8] The complaint pleads no viable claims against them.

(b) Fricke

The complaint's only mention of "Case Manager Fricke," beyond the caption, is the allegation that "Defendants Carroll, Moeshoeshoe, Fricke, and Settles collaborated to trump up charges against [the plaintiff] to remove him from [CCC-O], in retaliation for him filing a civil action against them." Filing 9 at 2. But this bare allegation isn't enough to plead a conspiracy. *See Johnson*

---

[7] As the Court judicially notices. *See Springfield v. Carter*, 175 F.2d 914, 917 (8th Cir. 1949).

[8] Fed. R. Civ. P. 25(d) is inapplicable because the action wasn't "pending" when Frakes and Peterson ceased to hold office. *Ashokkumar v. Elbaum*, 932 F. Supp. 2d 996, 1010 n.7 (D. Neb. 2013) (citing *Ford v. Dowd*, 931 F.2d 1286 (8th Cir. 1991)).

*v. Perdue*, 862 F.3d 712, 718 (8th Cir. 2017). Accordingly, the complaint doesn't state a claim against "Case Manager Fricke."

### (c) Official Capacity Defendants

Each defendant is also sued in their official and individual capacities, along with the Board of Parole and NDCS, which are obviously arms of the State of Nebraska. So, too, are the official capacity defendants effectively the same as the State of Nebraska. *See Ass'n for Gov't Accountability v. Simon*, 128 F.4th 976, 978 (8th Cir. 2025). To the extent the plaintiff asserts federal claims against the official-capacity defendants for money damages, neither the Eleventh Amendment nor § 1983 permit recovery. *See EEE Minerals, LLC v. State of N.D.*, 81 F.4th 809, 815 (8th Cir. 2023), *cert. denied sub nom. EEE Minerals, LLC v. North Dakota*, 144 S. Ct. 1097 (2024); *Roe v. Nebraska*, 861 F.3d 785, 789 (8th Cir. 2017) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)); *Kittle-Aikeley v. Strong*, 844 F.3d 727, 742 (8th Cir. 2016).

The plaintiff does request prospective injunctive relief, filing 9 at 5, and under the *Ex Parte Young* doctrine, a private party can sue a state officer in their official capacity to enjoin a prospective action that would violate state law. *Simon*, 128 F.4th at 978 (citing *Ex Parte Young*, 209 U.S. 123 (1908)). But the injunctive relief requested flows entirely from the plaintiff's "unlawful restraint" claim, which will be dismissed for reasons explained below.[9]

Accordingly, the plaintiff's complaint cannot proceed against the State, arms of the State, or state officials in their official capacities.

---

[9] Nor, for that matter, would an *Ex Parte Young* claim be cognizable against the "Board of Parole" as an institution, as opposed to its individual members in their official capacities. *See Monroe v. Ark. State U.*, 495 F.3d 591, 594 (8th Cir. 2007).

## 2. IMPROPER JOINDER

The plaintiff's claims are also improperly joined. The plaintiff alleges claims relating to his confinement over a period of years that appear related only because they happened while he was confined. Many of the claims alleged and the defendants named in the plaintiff's operative complaint do not have the factual or temporal continuity required to allow him to bring all of these unrelated claims against all of the named defendants in the same action.

Fed. R. Civ. P. 20(a)(2) imposes two specific conditions to join defendants in one action: (1) a right to relief is asserted against them jointly or severally relating to, or arising out of the same transaction or occurrence, and (2) that any question of law or fact common to all defendants will arise in the action. For purposes of Rule 20, the word "transaction" has been described as "a word of flexible meaning," comprehending "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 167 (E.D. Mich. 2012) (quoting *Mosley v. Gen. Motors Corp.,* 497 F.2d 1330 (8th Cir. 1974) (citing *Moore v. N.Y. Cotton Exch.,* 270 U.S. 593 (1926))).

Therefore, Rule 20 permits any *reasonably related* claims for relief against different parties to be tried in a single proceeding. *Id.* (citing *Mosley,* 497 F.2d at 1333); *see also Perry v. Erdos*, No. 1:22-CV-178, 2023 WL 2781585, at *2 (S.D. Ohio Apr. 5, 2023). Ultimately, while joinder of claims, parties, and remedies are encouraged under the Federal Rules of Civil Procedure, permissive joinder is not applicable in all cases. *Mosely*, 497 F.2d at 1333.

While all claims against the same defendant may generally be raised in the same case, the claims against different defendants must meet the transaction or occurrence test. As pleaded, there is no apparent connection between many of the defendants. The only individual defendant common to

more than one claim is Settles, and—as will be discussed below—the only claim that pleads any *facts* about what Settles may have done is the asbestos claim.

Joinder of the claims and parties cannot proceed as currently pled. As such, this Court has the following options: (1) dismissing the unrelated claims and parties from this action, (2) severing the unrelated claims and parties into a new case or cases, or (3) allowing the plaintiff to amend his complaint for a second time so he can decide which parties and claims he wishes to dismiss or sever into a new case or cases.

### 3. CLAIMS FOR RELIEF

However, the plaintiff's individual claims have other problems—the Court finds only one claim for relief sufficiently pled to get past initial review. Accordingly, the Court will solve the misjoinder problem by dismissing each claim except for the plaintiff's retaliation claim as to Carroll and Moeshoeshoe.

### (a) Retaliation

The plaintiff alleges that several of the defendants conspired to frame him for possessing contraband, in retaliation for his bringing a separate civil action against them. That arguably implicates two different constitutional theories pursuant to § 1983: A reckless investigation or manufactured evidence claim, and a First Amendment retaliation claim.[10] One of those theories fares better than the other.

---

[10] He also suggests that the defendants departed from procedure in investigating and pursuing the disciplinary action against him. The Court reads the plaintiff's allegations regarding state law and NDCS procedures as being circumstantial evidence supporting his claim that the real motive was retaliatory—not as some sort of freestanding negligence or constitutional claim. And such claims generally aren't cognizable in federal court. *See, e.g.*, *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (no federal constitutional liberty interest

*(i) Reckless Investigation or Manufactured Evidence*

A reckless investigation claim may be supported by proof that investigators exerted systematic pressure to implicate the defendant in the face of contrary evidence, and a manufactured false evidence claim requires proof that investigators deliberately fabricated evidence in order to frame a criminal defendant. *Winslow v. Smith*, 696 F.3d 716, 732 (8th Cir. 2012). Such claims implicate the Due Process Clause. *See White v. Smith*, 696 F.3d 740, 754 (8th Cir. 2012).

But to prove a due process violation, the plaintiff must show that the reckless investigation or false evidence deprived him of his liberty. *Torgerson v. Roberts Cnty. of S. Dakota*, 139 F.4th 638, 645-46 (8th Cir. 2025); *Winslow*, 696 F.3d at 735. So, for instance, if an officer fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process; the action did not cause an infringement of anyone's liberty interest. *Winslow*, 696 F.3d at 735 (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012)).

And the plaintiff's allegations here—that he was removed from a work release program and transferred from one correctional facility to another—are insufficient to show a deprivation of liberty for purposes of due process. *See Staszak v. Romine*, 221 F.3d 1344 (8th Cir. 2000); *see also Parks v. Dooley*, No. 09-cv-3514, 2011 WL 847011, at *22 (D. Minn. Feb. 11, 2011) (collecting cases). The question is whether the deprivation alleged imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of

---

in having prison officials follow prison regulations). *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008) (negligent failure to investigate doesn't violate due process). *Ricker v. Leapley*, 25 F.3d 1406, 1411 (8th Cir. 1994) (procedural irregularities during disciplinary proceeding do not implicate Eighth Amendment).

prison life." *Staszak*, 221 F.3d at 1344 (citing *Sandin v. Conner,* 515 U.S. 472 (1995)). The Eighth Circuit has directly held that removal from a halfway house and participation in work release does not deprive a prisoner of "'the sort of substantial freedom that gives rise to a liberty interest inherent in the Due Process Clause.'" *Id.* (quoting *Callender v. Sioux City Residential Treatment Facility,* 88 F.3d 666, 668 (8th Cir. 1996)). The plaintiff's claim that he was disciplined based on a reckless investigation and/or manufactured evidence does not state a Due Process violation.

### (ii) First Amendment Retaliation

It is well established that the right to file a legal action is protected under the First Amendment. *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013); *see also Lewis v. Jacks,* 486 F.3d 1025, 1028 (8th Cir. 2007). Accordingly, a prisoner has a cause of action when the prisoner alleges that prison officials filed disciplinary charges based upon false allegations in retaliation for the prisoner's participation in grievances against prison officials. *Lamar v. Payne,* 111 F.4th 902, 908-09 (8th Cir. 2024).

In order to demonstrate retaliation in violation of the First Amendment under § 1983, a plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Spencer,* 738 F.3d at 911. The retaliatory conduct itself need not be a constitutional violation—the violation is acting in retaliation for the exercise of a constitutionally protected right. *Id.*; *see also Santiago v. Blair,* 707 F.3d 984, 994 (8th Cir. 2013) (conduct that retaliates against exercise of a constitutionally protected right is actionable even if alleged retaliatory conduct does not itself rise to level of constitutional violation). Adverse actions showing

retaliation may, for instance, include denial of privileges, or worsening an inmate's working conditions. *Spencer*, 738 F.3d at 911. The key question is whether the actions were taken in retaliation for protected activity. *Id*.

If the alleged retaliation was disciplinary, prison officials may successfully defend against it with some evidence that the inmate actually committed a rule violation. *Id*.; *see also Lamar*, 111 F.4th at 909. But on the face of his complaint, the plaintiff's allegations—that he was removed from the work release program and sent to a different facility as retaliation for protected conduct—sufficiently state a claim for purposes of initial review. *See Spencer*, 738 F.3d at 911 (removal from trustee program could be an adverse action resulting in loss of access to income, work opportunities, and housing advantages); *Lewis*, 486 F.3d at 1029 (retaliatory action that worsens an inmate's working conditions can be sufficiently adverse to be actionable).

### (iii) Named Defendants

As explained above, the complaint doesn't state a claim as to Fricke. Nor is the retaliation claim sufficient as to Settles. As with Fricke, Settles is conclusorily asserted to have "collaborated" with the other defendants, with no mention of what he actually did—a bare allegation that isn't enough to plead a conspiracy. *See Johnson*, 862 F.3d at 718. But the Court will permit this claim to proceed to service of process as to Carroll and Moeshoeshoe in their individual capacities.

### (b) Exposure to Friable Asbestos

The plaintiff is suing both Settles and Floors, Inc. for allegedly exposing him—or at least potentially exposing him—to asbestos. Filing 9 at 3.

*(i) Settles*

The claim as to Settles seems to be that the plaintiff asked for the facility to be tested for asbestos, but he refused. *See* filing 9 at 3. That, the plaintiff suggests, denied him access to the courts by not generating or preserving evidence. Filing 9 at 3. It also, he says, was "deliberate indifference to a serious health concern." Filing 9 at 3.

### a. Denial of Access to the Courts/Duty to Preserve Evidence

Those in prison have a constitutional right of access to the courts. *Williams v. Hobbs*, 658 F.3d 842, 851 (8th Cir. 2011) (citing *Bounds v. Smith*, 430 U.S. 817 (1977)). To state this claim, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim. *Id.* at 851-52. But that

> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

Access to the courts claims typically result from deficiencies in a prison's law library or legal assistance program that hinder an inmate's ability to bring a claim. *Williams*, 658 F.3d at 852 (citing *Lewis*, 518 U.S. 343). By contrast, the Due Process Clause is not meant to enable the prisoner to discover grievances, and to litigate effectively once in court. *Id*. The first problem with the plaintiff's claim, then, is that it's grounded in an inability to discover a potential claim, which the Eighth Circuit has held does not constitute a due process violation. *Id*. He doesn't assert that he's physically unable to file a claim based on asbestos exposure—only that he's unable to obtain the information needed to discover such a claim. *See id*.

Another problem is that the right of access to the courts is narrowly tailored to claims challenging a prisoner's sentence or the conditions of their confinement. *See Lewis*, 518 U.S. at 355. And the plaintiff can no longer challenge the conditions of his confinement, because he's no longer confined. *See Inmates of Lincoln Intake and Detention Facility by Windes v. Boosalis*, 705 F.2d 1021, 1023 (8th Cir. 1983); *MacDermott v. Fed. Bur. of Prisons*, No. 24-CV-1984, 2025 WL 1788321, at *3 (D. Minn. May 27, 2025) (collecting cases). A prisoner's release from confinement also generally moots claims of denial of access to the courts. *See Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991).

The foregoing discussion also disposes of the plaintiff's claim that Settles had a constitutional duty to preserve evidence. The Eighth Circuit has declined to recognize such a right with respect to evidence of potential civil claims. *See Williams*, 658 F.3d at 852.[11]

---

[11] Even the failure to preserve evidence relevant to criminal prosecutions is only actionable if the criminal defendant can show bad faith on the part of the police, *see Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), which the plaintiff doesn't allege here.

b. Deliberate Indifference to Serious Health Concern

A prison official's deliberate indifference to a prisoner's serious health concern is a cognizable Eighth Amendment claim. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But there are two elements to such a claim: First, the plaintiff must demonstrate an objectively serious medical need, and second, he must show that the defendant actually knew of, but deliberately disregarded, such need. *Cannon v. Dehner*, 112 F.4th 580, 586 (8th Cir. 2024), *cert. denied,* 145 S. Ct. 1149 (2025). The plaintiff's allegations fall short on both elements.

## (1) Objective prong

First, to be objectively serious, a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention. *Troupe v. Young*, No. 24-1036, 2025 WL 1910566, at *7 (8th Cir. July 11, 2025). And the Eighth Amendment may encompass a condition of confinement that threatens to cause health problems in the future. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993). But to state such a claim, the objective factor of the deliberate indifference test requires the plaintiff to show that he, himself, is being exposed to an unreasonable risk with respect to his future health. *Id.* at 35. Obviously, he no longer is. But even if he were still in prison, determining whether those conditions would violate the Eighth Amendment requires more than examining the likelihood of any possible injury being caused by the alleged exposure:

> It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk

- 16 -

of which he complains is not one that today's society chooses to tolerate.

*Id.* at 36. And here, all the plaintiff alleges is that he wasn't allowed to independently test the environment for asbestos. He doesn't allege that he was actually exposed to asbestos in any quantity, much less a quantity likely to actually injure him in the future. And he admits that such evidence, if it ever existed, has been lost. Filing 9 at 3. So he cannot prove the objective element of a deliberate indifference claim. *See Harris v. Donald*, 266 F. App'x 804, 808 (11th Cir. 2008); *see also Austin v. Tennis*, 381 F. App'x 128, 131 (3d Cir. 2010); *cf. Templeton v. Anderson*, 607 F. App'x 784, 788 (10th Cir. 2015).

## (2) Subjective Prong

Nor do the plaintiff's allegations satisfy the subjective element, in the absence of any evidence of actual asbestos exposure. The plaintiff alleges that Settles told him "that a determination was made by the maintenance personnel that there was no asbestos." Filing 9 at 3. But the subjective component requires the plaintiff to plead facts sufficient to show Settles subjectively knew of a serious medical need and deliberately disregarded it; this requires a mental state akin to criminal recklessness. *Troupe*, 2025 WL 1910566, at *7; *see also Beard v. Falkenrath*, 97 F.4th 1109, 1118 (8th Cir. 2024).

What the plaintiff has alleged was that Settles knew of the plaintiff's concerns, but nothing suggesting a subjective awareness of an *actual* serious medical need—because, as explained above, the plaintiff hasn't alleged the *existence* of such a need, much less Settles' awareness of it. And what has been alleged only suggests that Settles was satisfied with the conclusion of maintenance personnel that there was no risk of asbestos. At most, that

- 17 -

suggests negligence—certainly not deliberate indifference. *See Troupe*, 2025 WL 1910566, at *8.

### (ii) Floors, Inc.

The basis for naming Floors, Inc. as a defendant is unclear. None of the *facts* alleged in the complaint suggest that Floors, Inc. was a state actor for purposes of § 1983, as opposed to an ordinary government contractor.[12] The "under-color-of-state-law" element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful. *Ams. United for Separation of Church and State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 421 (8th Cir. 2007).

It is true that in certain circumstances the government may become so entangled in private conduct that the act of an ostensibly private organization is treated as if a State had caused it to be performed. *Id*. at 422. But then the issue is whether the alleged infringement of federal rights is fairly attributable to the State. *Id*. So, state action may be found only if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself. *Id*.

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state

---

[12] The plaintiff asserts that Floors, Inc. was acting under color of state law, filing 9 at 6, but to state a claim the plaintiff must plead facts, not merely assert legal conclusions. *See DeCastro v. Hot Springs Neurology Clinic, P.A.*, 107 F.4th 813, 816 (8th Cir. 2024).

official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id*. (quoting *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922 (1982)).

But here, the complaint indicates only that Floors, Inc. was hired to replace carpet and tile. Filing 9 at 3. It was hired to provide services *to* the State, not *for* the State. A private company hired to perform a commercial service for a state actor doesn't automatically become a state actor itself. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982); *see also Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 584 (8th Cir. 2006).

That leaves ordinary state law claims, primarily (perhaps exclusively) negligence. Two problems there. The first is that it doesn't state a claim for relief under Nebraska law, because—even assuming that the plaintiff's allegations are sufficient to support a duty owed by Floors, Inc. and a breach of the standard of care—the plaintiff doesn't actually plead any injury caused by Floors, Inc.'s conduct. *See, e.g.*, *Christensen v. Broken Bow Pub. Schs.*, 981 N.W.2d 234, 241 (Neb. 2022) (negligence depends on showing that plaintiff suffered injury caused by wrongful act or omission of defendant). Even parasitic damages—that is, damages occasioned by anxiety due to a reasonable fear of future harm—must be attributable to an underlying physical injury. *See Hamilton v. Nestor*, 659 N.W.2d 321, 325 (Neb. 2003) (citing *Hartwig v. Oregon Trail Eye Clinic*, 580 N.W.2d 86 (Neb. 1998)).

The second problem with the plaintiff's claim against Floors, Inc. is more fundamental: The only basis for jurisdiction over such a claim in this federal

question case is some sort of supplemental or ancillary jurisdiction.[13] But the Court can only exercise supplemental or ancillary jurisdiction if there's a federal claim providing original jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (citing 28 U.S.C. § 1367); *Peacock v. Thomas*, 516 U.S. 349, 355 (1996). Ancillary jurisdiction requires factual interdependence. *Peacock*, 516 U.S. at 355. So too does supplemental jurisdiction. *See Wisc. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 387 (1998).

In other words, any jurisdiction over any state-law claims against Floors, Inc. depends on the plaintiff's federal-law claim against Settles—and as explained above, the plaintiff has failed to state that claim. The Court could exercise its discretion to retain a pendant claim even without the federal "hook," considering principles of judicial economy, convenience, fairness, and comity. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). But those considerations weigh against retaining this claim—particularly when, as explained above, it was misjoined in the first place.

### (c) Theft of Property

The plaintiff alleges that someone—either the evidence custodian at CCC-O or the evidence custodian at the Omaha Correctional Center—stole about $1,000 of personal property from him. Filing 9 at 4. He claims that he was "deprived of his property in violation of the Constitution by one or both custodians." Filing 9 at 4.

---

[13] A search of the Nebraska Secretary of State's records establishes that Floors, Inc. is a Nebraska corporation, precluding diversity jurisdiction—that is, jurisdiction premised on the plaintiff and defendants being citizens of different states. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 88-89 (2005) (citing 28 U.S.C. § 1332(c)(1)).

But theft of personal property isn't unconstitutional if an adequate state post-deprivation remedy is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Ali v. Ramsdell,* 423 F.3d 810, 814-15 (8th Cir. 2005); *see also Weimer v. Amen*, 870 F.2d 1400, 1406 (8th Cir. 1989). And the Supreme Court has held that Nebraska's tort claim procedures provide an adequate post-deprivation remedy for a prisoner's property loss. *Parratt*, 451 U.S. at 543-44 (citing Neb. Rev. Stat. § 81-8,209 *et seq.*).[14]

The plaintiff does not allege exhausting his post-deprivation remedies, or establish any other basis to conclude that they are inadequate, and so does not state a claim for relief under § 1983. *See Hopkins v. City of Bloomington,*

---

[14] The Nebraska Supreme Court's subsequent decision in *Rouse v. State*, 921 N.W.2d 355 (Neb. 2019), is not to the contrary. In *Rouse*, the Nebraska Supreme Court held, relying on an analogous provision of the Federal Tort Claims Act, that Nebraska's State Tort Claims Act exclusion of claims "arising with respect to . . . the detention of any goods or merchandise by any law enforcement officer" precluded a claim for the seizure and negligent disposal of an inmate's personal property. *Id.* at 361 (*comparing* Neb. Rev. Stat. § 81-8219(2), *with* 28 U.S.C. § 2670(c)) (citing *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008)). But that language has been held to permit a claim for the intentional tort of conversion, when the defendant allegedly stole property for personal use (as opposed to "detention" for official purposes). *See Edwards v. United States*, 57 F. Supp. 3d 938, 943 n.2 (D. Minn. 2014); *Reynoso v. City and Cnty. of S.F.*, No. 10-CV-984, 2012 WL 646232, at *4 (N.D. Cal. Feb. 28, 2012); *Husband v. United States*, 90 Fed. Cl. 29, 40 (2009). Given the Nebraska Supreme Court's reliance on federal law to determine the meaning of the analogous state statutory language, *see Rouse*, 921 N.W.2d at 361, the Court finds that the Nebraska Supreme Court would reach the same conclusion, *see Hunter v. Page Cnty., Iowa*, 102 F.4th 853, 866 (8th Cir. 2024) (federal court faced with determination of state law predicts how state's highest court would decide issue by looking to other reliable indicators of state law, including decisions in analogous cases).

774 F.3d 490, 492 (8th Cir. 2014); *Walden v. Carmack,* 156 F.3d 861, 874 (8th Cir. 1998); *see also Groenewold v. Kelley,* 888 F.3d 365, 373 (8th Cir. 2018).[15]

### (d) Unlawful Restraint

The plaintiff's final claim, which he styles as "unlawful restraint," presents two problems. The first is that it's premised on a misstatement of fact. The second is that it's an impermissible second or successive habeas claim.

### *(i) The Sentence Actually Imposed*

To begin with, the plaintiff alleges that "Judge Flowers indicated by her sentence that [the plaintiff] was to serve 10 years to discharge the sentence. That discharge date would have been about February 5, 2023." Filing 9 at 4. That allegation is contradicted by the public record, and the Court isn't obligated to accept it. *See Miller-Fields v. Londregan,* 755 F. Supp. 3d 1122, 1127 (D. Minn. 2024); *cf. Waters v. Madson,* 921 F.3d 725, 734 (8th Cir. 2019).

Under Nebraska law, a sentence validly imposed takes effect from the time it is pronounced. *State v. Geller,* 16 N.W.3d 365, 370 (Neb. 2025). And the state court pronounced sentence in the plaintiff's case as follows:

> I am going to sentence you to not less than 10 nor more than 20 years in a institution under the jurisdiction of the Department of Correctional Services. You do not — because of the habitual criminal, you do not earn any good time toward parole. You do earn good time towards mandatory release. So the 10 to 20, assuming

---

[15] Nor, the Court notes, can the plaintiff bring a claim under the State Tort Claims Act in this Court, as the State's waiver of sovereign immunity for such claims does not extend to actions in federal court. *Montin v. Moore,* 846 F.3d 289, 293 (8th Cir. 2017) (citing Neb. Rev. Stat. § 81–8,214); *Harrington v. Strong,* 363 F. Supp. 3d 984, 996 n.8 (D. Neb. 2019).

you keep all the good time that's available to you, is in fact, a 10-year sentence. You have to serve the full 10 years. If you lose good time, that could extend it, because that would extend your mandatory discharge date.

Case no. 4:16-cv-3033 filing 28-23 at 64-65. That oral pronouncement would control over any later written sentence, were there inconsistency. *See Geller*, 16 N.W.3d at 370. But here, there wasn't: The sentencing court's minute entry, case no. 4:16-cv-3033 filing 28-28 at 3, and written judgment, case no. 4:16-cv-3033 filing 28-19 at 20-21, are to the same effect. The only *arguable* inconsistency is the written judgment, which provided that the plaintiff would "be eligible for parole when he has served 10 years plus one-half of the minimum sentence and the Defendant's mandatory release date shall be when be has served 10 years *or such other length of time as calculated by the Department of Correctional Services pursuant [to] statute*." 4:16-cv-3033 filing 28-19 at 21 (emphasis supplied). But every iteration of the sentence provided that he would serve 10 to 20 years' imprisonment as a result of the 10-year mandatory minimum sentence for a habitual criminal.

The effect of that sentence is clear under Nebraska law: The mandatory discharge date is calculated by subtracting the mandatory minimum sentence from the maximum sentence, halving the difference, and adding that difference to the mandatory minimum. *Gray v. Frakes*, 973 N.W.2d 166, 171 (Neb. 2022). The offender cannot become eligible for parole until the mandatory minimum is served in full, and good time credits can be applied to the maximum term only after the offender serves the mandatory minimum. *Id.*

The plaintiff alleges that in his case, NDCS "changed the discharge date from 2023 to 2028, which said change is not reflected in the court file." Filing 9 at 4. But that wasn't a "change," because it is reflected in the court file: The

sentencing court imposed a 10 to 20 year sentence in 2013, and NDCS set the discharge date in 2028, precisely as provided by law. The plaintiff served his 10-year mandatory minimum until 2023 and became eligible for parole then, while his mandatory discharge date was 5 years later in 2028: (20-10) / 2 = 5. *See Gray,* 973 N.W.2d at 171.

### *(ii) Second or Successive Habeas Petition*

But there's also a jurisdictional problem with the plaintiff's claim. He insists that he's "not challenging the court-imposed sentence, but the quasi-judicial act" of "chang[ing]" his discharge date. Filing 9 at 4. And the relief he's seeking is enjoining the defendants and the parole board from requiring him to serve his sentence until 2028—presumably, by continuing to supervise him on parole and at least potentially revoking his parole. *See* filing 9 at 5.

He is, in other words, challenging the legality of his continued custody. Although the plaintiff is no longer a prisoner, he remains in custody for habeas purposes. *Maleng v. Cook,* 490 U.S. 488, 491 (1989) (citing *Jones v. Cunningham,* 371 U.S. 236 (1963); *Hensley v. Mun. Ct., San Jose-Milpitas Jud. Dist., Santa Clara Cnty.,* 411 U.S. 345 (1973); *Braden v. 30th Jud. Cir. Ct. of Ky.,* 410 U.S. 484 (1973)). And regardless of how the plaintiff styles it, his claim effectively or ultimately seeks habeas relief. *See Tyler v. Purkett,* 413 F.3d 696, 701 n.7 (8th Cir. 2005) (citing *Gonzalez v. Crosby,* 545 U.S. 524 (2005)); *United States v. Lambros,* 404 F.3d 1034, 1036 (8th Cir. 2005).

The problem with the plaintiff's challenge to his custody is that it's not his first time. Petitioners who seek to challenge their custody through a federal habeas petition are generally afforded one opportunity to do so, and before a court can consider a second or successive federal habeas filing on the merits, there are strict procedural requirements imposed by the Antiterrorism and Effective Death Penalty Act of 1996. *Rivers v. Guerrero,* 145 S. Ct. 1634, 1639-

40 (2025) (citing 28 U.S.C. § 2244(b)). Most pertinently, a second or successive petition must be authorized by the Court of Appeals. *See* § 2244(b)(3). And it's well-established that petitioners may not bypass the authorization requirement of § 2244(b)(3) for filing a second or successive habeas action by purporting to invoke some other procedure. *Lambros*, 404 F.3d at 1036.

Yet that's exactly what the plaintiff is trying to do here. This isn't his first habeas claim, or his second, or even his tenth. *See, e.g.*, *Mumin v. Frakes*, No. 4:16-CV-3033, 2017 WL 1131888 (D. Neb. Mar. 24, 2017); *Mumin v. Hansen*, No. 4:17-CV-3169, 2018 WL 10394892 (D. Neb. Feb. 28, 2018); *Mumin v. Hansen*, No. 4:17-CV-3164 (D. Neb. Mar. 30, 2018); *Mumin v. Hansen*, No. 4:18-CV-3015 (D. Neb. Mar. 30, 2018); *Mumin v. Hansen*, No. 8:18-CV-102, 2018 WL 9945200 (D. Neb. Mar. 30, 2018); *Mumin v. Hansen*, No. 8:19-CV-59 (D. Neb. Mar. 20, 2019); *Mumin v. Hansen*, No. 4:17-CV-3164, 2019 WL 6176086 (D. Neb. July 12, 2019); *Mumin v. Hansen*, No. 8:19-CV-272, 2020 WL 1248487, at *3 (D. Neb. Mar. 16, 2020); *Mumin v. Wasmer*, No. 8:20-CV-117, 2020 WL 2732089 (D. Neb. May 26, 2020); *Mumin v. Hansen*, No. 8:19-CV-272, 2020 WL 3402043 (D. Neb. June 19, 2020). It's not even the first time he's raised essentially the same argument. *See Mumin*, 2020 WL 3402043, at *4.

In short, the plaintiff's "unlawful restraint" claim is both contradicted by court records and an unauthorized successive habeas claim.

## IV. CONCLUSION

For purposes of initial review, the plaintiff has alleged a plausible claim for retaliation in violation of the First Amendment against defendants "Case Manager Carroll" and "Case Worker Moeshoeshoe" in their individual capacities. The plaintiff's other claims will be dismissed without prejudice.

Accordingly, this case will proceed to service of process. The Court cautions the plaintiff, however, that allowing his claims to proceed to service is not a determination of the merits of his claims or potential defenses to them.

IT IS ORDERED:

1.   The plaintiff's claims for asbestos exposure, theft, and unlawful restraint are dismissed without prejudice.

2.   The plaintiff's claims against Shawn Settles; "Case Manager Fricke"; "Evidence Custodian (CCCO)"; "Evidence Custodian (OCC)"; "Nebraska Department of Corrections"; Scott Frakes, Doug Peterson; Nebraska Parole Board; and Floors, Inc. are dismissed without prejudice, and the Clerk of the Court is directed to terminate them as parties.

3.   The plaintiff's claims against "Case Manager Carroll" and "Case Worker Moeshoeshoe" in their official capacities are dismissed without prejudice, and the Clerk of the Court is directed to update the caption to reflect that they are sued in their individual capacities only. The Clerk of the Court is further directed to update the caption to identify defendant Carroll as "Case Manager Lindsey Carroll."

4.   The plaintiff's claim for retaliation in violation of the First Amendment against "Case Manager Lindsey Carroll" and "Case Worker Moeshoeshoe" in their individual capacities shall proceed to service of process.

5.    For service of process on Carroll and Moeshoeshoe in their individual capacities, the Clerk of the Court is directed to complete two sets of summons and USM-285 forms for each defendant.  The service address for the first set of forms is:

> Office of the Nebraska Attorney General
> 2115 State Capitol
> P.O. Box 98920
> Lincoln, NE 68509

The service address for the second set of forms is:

> Community Corrections Center - Omaha
> 2320 Avenue J
> Omaha, NE 68110

6.    The United States Marshal shall serve all process in this case without prepayment of fees from the plaintiff.[16]

7.    Fed. R. Civ. P. 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint.  However, the plaintiff is granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

---

[16] *Pro se* litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service.  *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases."  *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory).

8. The Clerk of Court is directed to set a case management deadline using the following text: **November 6, 2025**: deadline for service of process.

9. The Clerk of Court is further directed to update the plaintiff's address to P.O. Box 111003, Omaha, NE 68111, as the plaintiff identifies this as his current address. *See* filing 12; case no. 8:25-cv-440 filing 9. The plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

10. Because this non-prisoner case is proceeding to service of process, this case is removed from the *pro se* docket. The Clerk of the Court shall randomly assign new judges to this case and request a reassignment order from the Chief Judge.

Dated this 8th day of August, 2025.

BY THE COURT:

John M. Gerrard
Senior United States District Judge